UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| MARGIE F. JOHNSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00215-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Margie F. Johnson ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment [Doc. 23 & Doc. 29] and filed supporting briefs [Doc. 24 & Doc. 30]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 23] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 29] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

## I.  ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 16 ("Tr.")], Plaintiff filed her applications for DIB and SSI on September 22, 2016, alleging disability beginning July 30, 2012. She later amended her alleged onset date to June 30, 2015. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on September 19, 2018. On April 27, 2019, the ALJ found Plaintiff

was not under a disability as defined in the Social Security Act at any time from the amended alleged onset date through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II.   FACTUAL BACKGROUND

### A.   Education and Employment Background

Plaintiff was born August 19, 1971, making her 43 years old on the amended alleged onset date, which is considered a "younger person." 20 C.F.R. § 404.1563(c). She was 47 years old on the date of the ALJ's decision, which is also considered a "younger person." *Id.* She has at least a high school education and is able to communicate in English. She has past relevant work as a sandwich maker and a bookkeeper. The sandwich maker occupation is considered semi-skilled, and performed at the medium exertional level. The bookkeeper job is considered skilled and sedentary.

### B.   Medical Records

In her Disability Report, Plaintiff alleged disability due to "Back problems," arthritis, osteoporosis, curvature of the spine, heart problem, high blood pressure, and anxiety (Tr. 240). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C.   Hearing Testimony

At the hearing before the ALJ on November 19, 2018, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 33-64).

2

## III.  ELIGIBILITY AND THE ALJ'S FINDINGS

### A.  Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

3

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through September 30, 2016. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability date, March 1, 2015 (Tr. 28). At step two, the ALJ found Plaintiff had the following severe impairments: (1) morbid obesity, (2) osteoarthritis of the left knee, (3) degenerative disc disease of the lumbar spine, (4) obstructive sleep apnea, and (5) coronary artery disease. The ALJ also found Plaintiff was diagnosed and receiving treatment for anxiety disorder, but that this impairment was non-severe. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19-21).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional restrictions:

- She is limited to no more than two hours sitting, one hour standing, and 30 minutes walking at a time.

- She is able to stand up to four hours, walk up to three hours, and sit up to six hours in an eight-hour workday.

4

- She is limited in pushing and pulling in her lower extremities to no more than frequently on the right and no more than occasionally on the left.

- She is limited to no more than frequent reaching, handling, fingering, or feeling bilaterally.

- She is precluded from climbing ladders, ropes, or scaffolds.

- She is precluded from kneeling and crawling.

- She is precluded from working around hazards, such as dangerous or moving machinery.

- She can only occasionally climb stairs or ramps.

- She can only occasionally balance, stoop, bend, or crouch.

- She should avoid concentrated exposure to extreme temperatures, excessive dampness, humidity, or pulmonary irritants.

(Tr. 21). At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a bookkeeper. In the alternative, the ALJ found there were other occupations available to Plaintiff in the national economy, existing in significant numbers, such as assembler, inspector/tester, and general production worker (Tr. 26-27).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the amended alleged onset date of June 30, 2015, and the date of the decision, April 27, 2019 (Tr. 28).

The Court notes Plaintiff filed prior applications for DIB and SSI in 2012. Those applications were denied on June 29, 2015. Plaintiff did not file any appeals beyond the Appeals Council level in connection with that decision, and so the ALJ's decision became administratively final for the period of time ending June 29, 2015; hence why Plaintiff amended her alleged onset

5

date to June 30, 2015 in connection with the applications at issue in this case. Also, in this case the ALJ noted, "[a]ny discussion of the evidence prior to June 30, 2015 is for historical and contextual purposes only." (Tr. 16). The ALJ further noted, "unless there is new and material evidence or a showing of 'changed circumstances' relating to a determination of the present claim, I am bound by the previous findings and determinations . . . ." (Tr. 16).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings. She raises two issues:

1. The ALJ failed to adequately develop the record with opinion evidence as to Plaintiff's RFC during the relevant period, despite clear and material changes in her condition.

2. The ALJ's RFC determination is unsupported by substantial evidence as he failed to incorporate limitations found at Step 2, corrupting the remainder of his decision.

[Doc. 24 at Page ID # 1637].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see*

6

*also McClanahan*, 474 F.3d at 833.  Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*,

7

125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

B.    **Change in Condition**

Plaintiff's first assignment of error relates to the fact that she had prior DIB and SSI applications that were denied on June 29, 2015 (Tr. 16). The prior denials are the reason Plaintiff amended her alleged onset date on the current applications to June 30, 2015, the day after the prior applications were denied. In denying Plaintiff's *current* applications, the ALJ found that although Plaintiff's mental and physical listings changed, her "physical and mental conditions have not changed, as noted in the decisional residual functional capacity . . . and the medical record as a whole." (Tr. 17). Accordingly, the ALJ adopted the findings of the prior ALJ (Tr. 17). Plaintiff contends that, "in coming to this determination, the ALJ failed to obtain any new opinion, and ended up relying on the non-examining physician's opinions from prior to Plaintiff's car accident and corresponding knee injury." [Doc. 24 at Page ID # 1644]. As a result, Plaintiff argues, the ALJ's "RFC determination is unsupported by substantial evidence." [*Id.*].

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) , the United States Court of Appeals for the Sixth Circuit held that an ALJ "guided by principles of res judicata—is bound by the RFC level determined in a previous claim for the same claimant absent new and material evidence indicating a change in the claimant's condition." *Pass v. Berryhill*, No. 1:17-cv-315, 2019 WL 1440272, at *12 (E.D. Tenn. Mar. 30, 2019) (citing *Drummond*, 126 F.3d at 837). However, in *Earley v. Commissioner of Social Security*, the Sixth Circuit clarified (but did not overrule) *Drummond*, explaining res judicata does not "prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold

8

that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." 893 F.3d 929, 931 (6th Cir. 2018). The *Earley* court noted "[r]es judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994." *Id.* at 933 (quotation marks omitted) (quoting *Groves v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998)).

Applying *Earley*, this Court has held that "when the period of time covered by the second disability claim is different than the first, res judicata should not apply." *Ferrell v. Berryhill*, No. 1:16-cv-00050, 2019 WL 2077501, at *4 (E.D. Tenn. May 10, 2019) (citing *Earley*, 893 F.3d at 933). *See also Groves*, 148 F.3d at 810 (cited in *Earley*, explaining that res judicata "need not" bar a subsequent disability claim, "especially when the disabling condition is progressive; for in that event there is no necessary inconsistency in finding an applicant not disabled at time t but disabled at t+1"). Instead, in reviewing ALJ decisions with issues concerning past decisions, courts ask whether the ALJ "gave the new evidence a fresh look. If so, then the ALJ's decision satisfied *Earley*; if not, then remand [is] appropriate." *Ferrell*, 2019 WL 2077501, at *4 (quoting *Johnson v. Comm'r of Soc. Sec.*, 2:17-cv-131226, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting district court cases), *report and recommendation adopted*, 2018 WL 6434778 (E.D. Mich. Dec. 7, 2018)). The "general takeaway has been that *Earley* only requires ALJs to give 'new evidence' a 'fresh look.'" *Id.* (quoting *Johnson*, 2018 WL 6440897, at *15-16).

While the "new evidence" standard could apply in some cases, this Court has also held that the test for determining whether an ALJ decision complies with *Earley* "should be whether *Drummond* prevented the ALJ from considering *all* the relevant evidence, not whether the ALJ properly considered *new* evidence." *Id.* at *5 (emphasis in original). "[I]f an ALJ is under the

9

mistaken assumption that she is bound by the earlier ALJ's decision, the applicant is faced with 'an unwarranted procedural burden . . . at the second hearing.'" *Maynard v. Comm'r of Soc. Sec.*, No. 2:18-cv-959, 2019 WL 3334327, at *6 (S.D. Ohio July 25, 2019) (quoting *Ferrell*, 2019 WL 2077501, at *6). *See also Groves*, 148 F.3d at 811 ("The earlier evidence just wasn't strong enough *by itself* to establish disability. It still might reinforce or illuminate or fill gaps in the evidence developed for the second proceeding." (citing *Robertson v. Sullivan*, 979 F.2d 623, 625 (8th Cir. 1992); *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 193 (1st Cir. 1987))).

The ALJ in this case referenced several items from Plaintiff's medical record from the time period associated with her earlier applications. Plaintiff does not contend the ALJ failed to properly consider the evidence from before June 30, 2015. Rather, Plaintiff's contention is that the ALJ failed to properly consider the new evidence, in particular the effects of a knee injury Plaintiff sustained in a car accident in July 2017.

As the Commissioner notes, the ALJ devotes the vast majority of the decision to discussing evidence from after Plaintiff's previous denials in 2015. The ALJ certainly did not "effectively ignore[] all of the evidence submitted after Plaintiff's old application," nor did the ALJ rely only on "evidence which does not relate to the period at issue in deciding Plaintiff's claim." [*See* Doc. 24 at Page ID # 1645 (Plaintiff's brief)]. Accordingly, the Court finds Plaintiff's *Drummond/Earley* argument is without merit.

The Court will now turn to Plaintiff's more substantive arguments concerning the ALJ's assessment of her physical RFC.

## C. Physical RFC

As mentioned, regarding her physical RFC, Plaintiff primarily argues the ALJ erred in not

incorporating additional limitations due to Plaintiff's July *2017* knee injury and lingering complications. Obviously, Plaintiff is correct that the prior RFC from 2015 did not, and could not, expressly accommodate the 2017 knee injury.

A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(2). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quotation marks and citation omitted). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013).

The ALJ discussed Plaintiff's knee issues in his decision, noting that an X-ray taken immediately following the accident showed degenerative changes in both of Plaintiff's knees but no fractures. The ALJ further noted that Plaintiff developed swelling in her left knee not long after the car accident, and was admitted to the hospital for the swelling on August 13, 2017. Cultures at the hospital revealed the swelling to be caused by a Staph infection. Plaintiff stayed in the hospital for a week on IV antibiotics, and "[m]edical staff irrigated the wound further." (Tr. 23). Plaintiff was released from the hospital on August 20, after she was in a stable condition. The ALJ then went on to describe Plaintiff's follow up care with William Dallas, M.D.:

> At a follow up visit on September 5, 2017, the claimant was "doing well" (B9F/4). The wound had closed. She felt better. The

11

doctor felt she could cancel her upcoming follow up appointment in three weeks. She returned on March 13, 2018, complaining of continuing left knee pain. It worsened with prolonged standing or walking. Diagnostic impression was [sic] left knee pain of unclear etiology—the doctor felt it could be musculoskeletal or it could be obesity related. She began taking an anti-inflammatory. On April 24, 2018, she said the anti-inflammatory helped a little, but she still had crepitus in [her] knee at times.

(Tr. 24).

The Court will address Plaintiff's argument that the ALJ committed reversible error in the formulation of the 2019 RFC, which was rendered in connection with the current applications, because the RFC should have included additional functional limitations due to the intervening knee injury in 2017. Specifically, Plaintiff argues the ALJ erred by relying in part on her conservative course of treatment and by relying on the opinions of the state agency physicians rather than ordering a consultative exam. Each argument will be addressed in turn.

### 1. Conservative treatment

Regarding her conservative treatment and lack of insurance, Plaintiff writes:

The record is clear that Plaintiff's knee injury continued to affect her throughout the relevant time period. Plaintiff originally injured her knee in a car accident, where she was a restrained passenger, in July of 2017. She presented to the ER on multiple occasions due to knee pain, but eventually developed a hematoma and infection that required a week-long hospitalization in August of 2017. After hospitalization, she started to regularly treat her knee with Dr. Dallas. Dr. Dallas saw Plaintiff in March and April of 2018, where he noted Plaintiff's knee was "not a lot better" with current NSAID treatment. Plaintiff continued to describe knee pain with walking or standing, and reported that her knee would swell up multiple times per week. She reported popping and clicking in her knees and Dr. Dallas noted the knee was "quite tender." MRI was possible but it was expensive, and she did not have health insurance. In April. Dr. Dallas indicated that Plaintiff was to continue with conservative treatment measures due to her lack of insurance. Plaintiff's symptoms were not stable with medication, as the ALJ indicates,

12

and her "conservative treatment" is a direct result of her lack of health insurance. The ALJ is unable to determine that surgery was even warranted, as she could not be evaluated for such. The ALJ has not indicated that this was considered when discounting Plaintiff's knee impairment. If an individual is truly unable to afford "conservative" forms of treatment, as here, it follows that this individual would likely also be unable to afford more aggressive or advanced forms of treatment.

[Doc. 24 at Page ID # 1645-46 (internal citations omitted)].

Typically, it is not improper for an ALJ to rely on a conservative course of treatment when assessing whether functional limitations are warranted or whether a condition is disabling. *See Branon v. Comm'r of Soc. Sec.,* 539 F. App'x 675, 678 (6th Cir. 2013) (a "conservative treatment approach suggests the absence of a disabling condition"); *see also Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (Where "there is no evidence that [a claimant] ever sought treatment offered to indigents or was denied medical treatment due to an inability to pay . . . the ALJ properly looked at [the claimant's] lack of treatment[.]"). In this case, however, there is some indication Plaintiff declined certain treatments due to a lack of insurance. For example, records from the Anderson County Health Department state that Plaintiff "has several chronic conditions and was on several meds but lost insurance last year and has been off all meds except those from pain clinic. Has continued to see pain clinic, but could not afford her heart meds." (Tr. 567).

The records concerning Plaintiff's knee from Dr. Dallas's office are not as definitive as Plaintiff suggests, however. She writes that an "MRI was possible but was expensive, and not recommended for this reason." [Doc. 24 at Page ID # 1641]. While Dr. Dallas did note that an MRI would be expensive without insurance, he also found that an MRI "may be a little premature," and he noted he was not sure an MRI was "indicated," or medically advisable, "right now based

13

on her intermittent symptoms." (Tr. 653). He suggested Plaintiff take over-the-counter Motrin. He further noted, as Plaintiff acknowledges, that while her knee was tender, it was stable, and Plaintiff could "ambulate satisfactorily without significant pain." (Tr. 653). In the "Plan" section, Dr. Dallas wrote that if the Motrin was not effective, "we will see about perhaps a knee x-ray or perhaps even referral to an orthopedic specialist." (Tr. 653). Plaintiff does not cite to anything in her medical record showing that she was referred to the specialist. Instead, a few months later, Plaintiff went to the emergency room complaining of knee pain. Providers there found that Plaintiff's medical anterior knee "is somewhat tender to palpation," but that she had "near full active range of motion in the knee." (Tr. 667).

Other than the MRI, Plaintiff does not cite to any treatments or studies related to her knee that were recommended but not undertaken because of her lack of insurance; nor does she suggest she made any efforts to obtain a low cost MRI. *See Dillard v. Comm'r of Soc. Sec.*, No. 3:17-cv-0799, 2018 WL 1875841, at *4 (M.D. Tenn. Apr. 19, 2018) ("There is also no evidence that she was denied any medication or treatment at any point during the relevant time period, nor any indication that any treatment was withheld or altered, due to financial hardship."), *report and recommendation adopted*, 2018 WL 3472825 (M.D. Tenn. July 18, 2018). And the record plainly reflects that Dr. Dallas did not think an MRI was necessary.

Furthermore, Plaintiff does not address the fact that she appears to have had health insurance for at least two years after her first application was denied, and relied on conservative treatment for her other conditions during that time period. The ALJ's comment about "conservative treatment" applies to Plaintiff's treatment of her conditions during that time period, as well:

14

Concerning degenerative disc disease and arthritis, medical imaging over the past several years establishes these as severe medically determinable impairments (B7F). However, the claimant's symptoms are stable with medication management and conservative treatment. The claimant has not had any recent surgery regarding these.

. . . .

The prior ALJ assessed the claimant with a sedentary residual functional capacity in the prior unfavorable ALJ decision, issued June 29, 2015. Subsequent medical evidence confirms monthly follow up visits with her primary care provider and pain clinic, no surgery or other interventions, and no overall change in her management program.

(Tr. 24-25).

Accordingly, to the extent the ALJ erred by failing to specifically acknowledge Plaintiff's lack of insurance in referring to her conservative course of treatment, the Court finds such error is harmless.

## 2. Opinions of non-examining state agency physicians

As noted, Plaintiff also argues the ALJ erred by assigning great weight to the non-examining state agency physicians. In considering a claim of disability, "the ALJ evaluates all relevant medical and other evidence and considers what weight" to assign to medical opinions from treating sources, examining sources, and nonexamining state agency physicians or psychologists, who simply review a claimant's medical record. *See Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The regulations establish a hierarchy for these opinions, with treating source opinions at the top, followed by the one-time consultative examiners, then the nonexamining DDS physicians.

15

A medical opinion from a treating source must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record.[1] 20 C.F.R. §§ 404.1527; 416.927; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citation omitted). This is known as the "treating physician rule." When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citations omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).

The opinions of the nonexamining state agency physicians are not entitled to "any special degree of deference." *Jagdeo v. Berryhill*, No. 3:17-CV-469-TWP-DCP, 2019 WL 1119363, at *10 (E.D. Tenn. Feb. 19, 2019) (citing *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)), report and recommendation adopted, 2019 WL 119642 (E.D. Tenn. Mar. 11, 2019); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274-75 (6th Cir. 2015) (opinions of consulting and nonexamining medical sources are not subject to the so-called "treating physician rule").

---

[1] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies.

16

Nevertheless, ALJs are not precluded from relying on the state agency opinions. *See Rudd*, 531 at 729 (*citing Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994)). SSR 96-6p provides that the state agency physicians "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." 1996 WL 374180, at *2 (July 2, 1996). Therefore, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3. "One such circumstance [is] when the 'State agency medical . . . consultant's opinion is based on a review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3). Another "appropriate circumstance" is when a treating physician's opinion is "not well-supported by the objective medical records." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428 (6th Cir. 2014).

Plaintiff complains that in this case, the state agency physicians' opinions were given before her knee injury. Plaintiff's knee injury occurred in July 2017. She was admitted to the hospital due to swelling and pain on August 13, 2017, and released on August 20, 2017. She went to a follow-up visit on September 5, 2017. She saw Dr. Dallas again on March 13, 2018, and April 24, 2018 (Tr. 23-24). In June 2018, she went to the emergency room for knee pain. The state agency physicians offered their opinions in March 2017 (P. Stumb, M.D.), and October 2017 (Ok Yung Chung, M.D.). Accordingly, Dr. Stumb's opinion predates Plaintiff's knee injury but Dr. Chung's does not. Nevertheless, it is not clear from the record whether Dr. Chung had access to the pertinent records.

17

"There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'" *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2001) (citing SSR 96-6p, 1996 WL 374180, at *2 (1996)). However, where "the non-examining source did not review a complete case record, we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quotation marks and citations omitted). Here, the ALJ adequately summarized the medical record, including the records dated after the state agency physicians offered their opinions. Indeed, the ALJ rejected Dr. Chung's October 2017 finding that Plaintiff's physical condition had improved since 2015. *See Downing v. Berryhill*, No. CV 16-10321, 2017 WL 2214591, at *3 (E.D. Mich. Mar. 16, 2017) (ALJ's reliance on DDS nonexamining consultant's opinion was within ALJ's zone of choice, even though opinion was based on incomplete record, where ALJ added limitations based on later records).

The Court finds the decision reflects that the ALJ's analysis of Plaintiff's physical RFC spanned the entire period of time covered by her medical records. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247-48 (6th Cir. 2016) (finding *Miller* requirements satisfied where the "ALJ's own analysis clearly spanned the entire record"). The decision also reflects the ALJ was aware of the fact that the record contains medical evidence post-dating the state agency physicians' opinions. The ALJ references the date of the car accident, each of the visits with Dr. Dallas, and Plaintiff's visits to other doctors in 2018 (*see* Tr. 24). The ALJ also lists the date of Dr. Stumb's opinion (Tr. 24). The ALJ does not specifically reference the date of Dr. Chung's opinion.

However, the ALJ does note that Dr. Chung offered two opinions: one for Plaintiff's DIB claim, for which Plaintiff must establish disability before her date last insured, September 30, 2016, i.e., before the car accident; and one for her SSI claim, which has no insured status requirement. *See Webster v. Soc. Sec. Admin.*, No. 3:18-cv-00045, 2019 WL 1065152, at *12 (M.D. Tenn. Feb. 19, 2019) (explaining that SSI is a "welfare program," and entitlement to benefits does not depend on insured status), *report and recommendation adopted*, 2019 WL 1058467 (M.D. Tenn. Mar. 6, 2019). The ALJ's separate analysis reflects that he was aware that the later medical records *are* relevant to Plaintiff's SSI claim. When coupled with his thorough discussion of these later records, the Court finds the ALJ satisfied the requirements of *Miller* when he decided to assign "great weight," to "most" of Dr. Chung's opinion and "great weight" to Dr. Stumb's opinion (Tr. 25).

### 3. Consultative exam

The only other issue Plaintiff raises regarding the ALJ's consideration of the opinion evidence is that the ALJ erred by not ordering a consultative exam. Specifically, she argues the ALJ "has no medical opinion regarding Plaintiff's knee injuries," and that the ALJ "is simply not qualified to interpret raw medical data in functional terms." [Doc. 24 at Page ID # 1645, 1646]. The Commissioner responds that the relevant regulations "allow an ALJ to determine how best to resolve inconsistencies in the record—and explain that an ALJ may recontact a medical source or order an additional examination, but is not required to do so." [Doc. 30 at Page ID # 1683].

As explained in 20 C.F.R. § 416.945, an ALJ must assess a claimant's RFC based on all the relevant evidence in the administrative record. 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The regulation also explains the RFC determination process:

19

> In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 416.912(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.

*Id.* § 416.945(a)(3). "The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8P, 1996 WL 374184, at *5. Twenty C.F.R. § 404.1520b(b) further provides that, when evidence in the case record is insufficient to make a determination the Agency "may need to take" one or more of the following actions:

> (i) We may recontact your medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. If we obtain medical evidence over the telephone, we will send the telephone report to the source for review, signature, and return;

> (ii) We may request additional existing evidence;

> (iii) We may ask you to undergo a consultative examination at our expense (see §§ 404.1517 through 404.1519t); or

> (iv) We may ask you or others for more information.

*Id.* § 404.1520b(b)(2)(i)–(iv); *see also* 20 C.F.R. § 416.920b(b).

An ALJ generally has "discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001); *e.g.*, *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013) (finding "the ALJ did not abuse her discretion by declining to obtain an additional assessment" where there was "a considerable amount of evidence pertaining to" the plaintiff's limitations and there was an RFC

20

assessment in the record); *see also* 20 C.F.R. § 404.1519a (describing situations in which a consultative examination may be ordered). Moreover, in this case, where Plaintiff was represented by counsel, "the ALJ did not have a special duty to develop the record." *Culp*, 529 F. App'x at 751.

Plaintiff has not made a sufficient showing that the available medical evidence was insufficient for the ALJ to make a determination regarding Plaintiff's physical RFC. First, there were RFC opinions from Dr. Stumb and Dr. Chung, on which the ALJ properly relied. Second, none of the subsequent records Plaintiff mentions in her brief support a finding that the ALJ abused his discretion. The records from Dr. Dallas indicate that while Plaintiff had "some left knee discomfort," he did not think an MRI was necessary, he found Plaintiff's knee was stable, and he observed she could ambulate satisfactorily without significant pain (Tr. 653). The ER records from late June 2018 indicate Plaintiff complained of pain in her left knee, but she had full range of motion (Tr. 667). She was discharged with instructions to take medication and follow up with her doctor (Tr. 673). Earlier that month, Plaintiff's providers recommended that she exercise moderately, for 30 minutes at a time, five times a week (Tr. 559). The ALJ specifically found that there was "no indication that treating sources have failed to provide evidence," or that "highly technical or specialized medical evidence" was necessary (Tr. 16). The ALJ also found there was no "conflict, inconsistency, or ambiguity, in the evidence, that a consultative examination could resolve." (Tr. 16). Plaintiff has not shown otherwise.

Relatedly, Plaintiff accuses the ALJ of improperly interpreting "raw medical data." [Doc. 24 at Page ID # 1646]. But as described above, it is clear that the "raw medical data," was interpreted by Plaintiff's providers and then described in terms that are within the ability of the

21

ALJ to understand and consider in assessing Plaintiff's RFC. *See Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 400-01 (6th Cir. 2018) (holding ALJ could rely on notations such as "strength is 5/5 bilaterally," and "normal movement of all extremities" in claimant's medical record); *Rudd*, 531 F. App'x at 727 ("Furthermore, the ALJ did not interpret raw medical data beyond her ability. The x-rays of Rudd's hands and lumbar spine, which were the only raw medical data, had already been read and interpreted by a radiologist.").

In concluding his RFC assessment, the ALJ found:

> The prior ALJ assessed the claimant with a sedentary residual functional capacity in the prior unfavorable . . . decision, issued June 29, 2015. Subsequent medical evidence confirms monthly follow up visits with her primary care provider and pain clinic, no surgery or other interventions, and no overall change in her management program. Her daily routine appears to be essentially unchanged. A review of all available medical evidence fails to indicate either improvement or worsening of her overall condition. The current residual functional capacity herein is a reflection of this conclusion[.]

(Tr. 25-26).

Contrary to Plaintiff's arguments, the ALJ cited to substantial evidence in the record to support these findings and to support his ultimate conclusion that Plaintiff was capable of a limited range of sedentary work. Plaintiff does not identify any additional functional limitations related to her knee or back, nor did any of her providers. *See Jones v. Comm'r of Soc. Sec.*, 36 F.3d 469, 474 (6th Cir. 2003) (noting plaintiff bears the burden of proving the existence and severity of functional limitations). As the Commissioner notes, in addition to the evidence discussed above, the ALJ found Plaintiff's complaints regarding her symptoms were not entirely consistent with the medical evidence in the record, as evidenced in part by a gap in her treatment in 2016 and Plaintiff's failure to comply with treatment [*see* Doc. 30 at Page ID # 1679-80]. The Court

22

concludes Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence as it pertains to Plaintiff's physical RFC. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

While Plaintiff cites to some evidence that she believes supports her claim of disability, an ALJ's decision is "not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). The record demonstrates the ALJ incorporated into the RFC the functional limitations he found to be credible and supported by the record. Accordingly, Plaintiff's motion will be denied to the extent she challenges the ALJ's assessment of her physical RFC.

## B. Mental RFC

Plaintiff also challenges the ALJ's assessment of her mental limitations. The ALJ found Plaintiff's anxiety was a medically determinable impairment but that it was nonsevere. At step two, the ALJ found Plaintiff had mild limitations in each of the four areas of mental functioning: (1) understanding, remembering, and applying information; (2) interacting with others; (3) maintaining concentration, persistence, and pace; and (4) adapting and managing oneself (Tr. 20). In assessing Plaintiff's RFC, the ALJ did not include any mental functional limitations. Indeed, the ALJ found Plaintiff could perform her past work, which is considered skilled. Plaintiff contends this was error in light of the ALJ's findings at step two.

The relevant regulations provide that the ALJ "will consider the 'limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851 (6th Cir. 2020) (quoting 20 C.F.R. § 416.945(e)). SSR 96-8p explains:

> While a "not severe" impairment(s) standing alone may not
> significantly limit an individual's ability to do basic work activities,
> it may--when considered with limitations or restrictions due to other
> impairments--be critical to the outcome of a claim. For example, in
> combination with limitations imposed by an individual's other
> impairments, the limitations due to such a "not severe" impairment
> may prevent an individual from performing past relevant work or
> may narrow the range of other work that the individual may still be
> able to do.

1996 WL 374184, at *5 (July 2, 1996).

In *Emard*, 953 F.3d 844, 852 (6th Cir. 2020), the plaintiff also argued the ALJ failed to

consider his nonsevere impairments in assessing RFC, and that the ALJ failed to consider the effect

of all of his impairments in combination with one another. 953 F.3d at 851. In applying SSR 96-

8p and the corresponding regulation, 20 C.F.R. § 416.945(e) ("Total Limiting Effects"), the Sixth

Circuit rejected the plaintiff's arguments, stating:

> Although the ALJ did not specifically discuss the combined
> effect of Emard's impairments or mention Emard's nonsevere
> impairments in assessing his residual functional capacity, she stated
> that she had carefully considered the entire record and "all
> symptoms" at this step in the process. This court in *Gooch v.
> Secretary of Health & Human Services*, 833 F.2d 589 (6th Cir.
> 1987), concluded that an ALJ's statement that he had conducted "a
> thorough review of the medical evidence of record," along with the
> fact that the ALJ had considered the claimant's impairments
> individually, sufficed to show that the ALJ had considered the
> impairments in combination. *Id.* at 591-92. It explained that "the
> fact that each element of the record was discussed individually
> hardly suggests that the totality of the record was not considered,"
> and "[t]o require a more elaborate articulation of the ALJ's thought
> processes would not be reasonable." *Id.* at 592. As in *Gooch*, the
> ALJ's statements that she had considered the entire record and all of
> Emard's symptoms suggest that she had considered Emard's
> impairments in combination.
>
> Moreover, the ALJ specifically noted in her summary of the
> applicable law that she was required to comply with SSR 96-8p's
> mandate to "consider all of the claimant's impairments, including

24

impairments that are not severe." District courts in this circuit have held that an ALJ need not specifically discuss all nonsevere impairments in the residual-functional-capacity assessment when the ALJ makes clear that her decision is controlled by SSR 96-8p. *See, e.g., Morrison v. Comm'r of Soc. Sec.*, No. 1:14-CV-1059, 2016 WL 386152, at *4 (W.D. Mich. Feb. 2, 2016), *aff'd*, No. 16-1360, 2017 WL 4278378 (6th Cir. Jan. 30, 2017); *Davis v. Comm'r of Soc. Sec.*, No. 1:14-CV-0413, 2015 WL 5542986, at *4 (W.D. Mich. Sept. 18, 2015). These decisions have relied on this court's decision in *White v. Commissioner of Social Security*, 572 F.3d 272 (6th Cir. 2009), where an ALJ's statement that she considered a Social Security Ruling pertaining to credibility findings sufficed to show that the ALJ complied with that ruling. *Id*. at 287. The ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by Emard's nonsevere impairments at step two of her analysis, fully support our conclusion that the ALJ complied with 20 C.F.R. § 416.945(e) and SSR 96-8p.

*Emard*, 953 F.3d at 851-52.

Plaintiff essentially acknowledges the ALJ complied with the requirements explained in *Emard*: "While an ALJ can get away with citing to SSR 96-8p in some scenarios, stating that they generally 'considered' the evidence, it is clear that the ALJ has not included relevant limitations here." [Doc. 24 at Page ID # 1651]. Her complaint is that there is not substantial evidence to support the ALJ's assessment of no functional limitations in Plaintiff's mental RFC.

Plaintiff does not cite to any particular record evidence in this section of her brief. Earlier in her brief, however, she references two visits with Richard Smith, M.D., at Wartburg Primary Care, from March and April 2015 [Doc. 24 at Page ID # 1639]. Dr. Smith's notes reflect that Plaintiff reported she was diagnosed with anxiety three years ago, for which she was prescribed a scheduled benzodiazepine (Tr. 500). The notes further reflect that Plaintiff reported her symptoms as "apprehension, a choking or smothering sensation, and tachycardia," that she experiences "[t]rue panic attacks," and that these symptoms are present "nearly every day." (Tr. 500).

25

Nevertheless, she denied having any anxiety problems that day (Tr. 502). At her next follow-up visits, on April 2 and 16, 2015, she was noted to be alert, and oriented to person, place, and time (Tr. 506, 510). She denied any anxiety problems during her April 16 visit.

The ALJ briefly mentions Plaintiff's record with Dr. Smith, noting that on July 6, 2015, Plaintiff's "sole diagnostic assessment was obesity." (Tr. 36). Later in his decision, the ALJ discussed the opinions of the state agency psychologists, noting that each of their opinions reflected that Plaintiff's anxiety was nonsevere (Tr. 25). The state agency psychologists further found Plaintiff had no more than mild limitations in each of the paragraph B criteria (Tr. 89, 101, 118, 134). The ALJ assigned great weight to their opinions for the stated reasons that: "they are consistent with the prior ALJ decision, the lack of specialized mental health treatment, the daily activities, and the recent medical evidence." (Tr. 25). The ALJ further noted:

> Medical records indicate that the claimant's anxiety is stable and controlled with medication management from her primary care provider. During the relevant period, the record does not show any inpatient psychiatric treatment, or the need for emergency care due to mental health symptoms. Nor is there any evidence of mental health therapy or any sort of consultation with a psychiatric specialist.

(Tr. 25).

Plaintiff does not challenge the ALJ's characterization of this evidence, and the Court finds the ALJ adequately and accurately considered the evidence and explained the basis for his decision not to include any functional limitations in Plaintiff's mental RFC. In other words, he addressed Plaintiff's nonsevere impairments along with her severe impairments, and found that Plaintiff's mild mental limitations at step two did not affect her RFC. *See Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *12 (N.D. Ohio Oct. 30, 2017) ("[T]he ALJ did not find that the

record demonstrated the need for specific work-based limitations related to concentration, persistence, or pace. Therefore, the ALJ was under no obligation to incorporate into either the RFC or the hypothetical question such limitations."). Courts in the Sixth Circuit have held that mild paragraph B findings at step two "do not require incorporation into an RFC assessment," provided the ALJ explains their reasoning. *See Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-cv-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017) (citing cases), *report and recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017); *Ridge v. Comm'r of Soc. Sec.*, No. 1:18-cv-109, 2019 WL 2424775, at *3 (E.D. Tenn. June 19, 2019). Again, the Court finds the ALJ adequately explained his reasoning.

Furthermore, Plaintiff does not indicate what additional functional limitations the ALJ should have assessed to accommodate for her anxiety. *See Jones*, 36 F.3d at 474 (noting plaintiff bears the burden of proving the existence and severity of functional limitations). Plaintiff has not met her burden here. And finally, the Commissioner points out that the ALJ made an alternative finding at step five that there were unskilled jobs available to a person with Plaintiff's RFC, including assembler, inspector/tester, and general production worker (Tr. 27).

Accordingly, the Court finds the ALJ's assessment of Plaintiff's mental RFC is supported by substantial evidence in the record, and Plaintiff has failed to show any harmful errors in his decision.

## V.    CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

> (1) Plaintiff's motion for summary judgment [Doc 23] is **DENIED**;
>
> (2) the Commissioner's motion for summary judgment [Doc. 29] is **GRANTED**; and

27

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*

SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE